IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY CAMP, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 16-1087 |
| v. | : | |
| | : | |
| NEW JERSEY MANUFACTURERS | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

**MARILYN HEFFLEY, U.S.M.J.**                                                                June 8, 2016

Before this Court is Defendant New Jersey Manufacturers Insurance Company's ("Defendant" or "NJMIC") Motion to Dismiss Count II of Plaintiff Mary Camp's ("Plaintiff" or "Camp") Amended Complaint made pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Motion to Dismiss will be granted.

I.   **BACKGROUND**

Camp filed her original Complaint on March 8, 2016 (Doc. No. 1) seeking compensatory and punitive damages for breach of contract (Count I) and bad faith in violation of 42 Pa. Cons. Stat. § 8371 (Count II) arising out of NJMIC's refusal to pay underinsured motorist ("UIM") benefits under an automobile insurance policy issued by NJMIC to Camp ("NJMIC Policy").

Camp alleges that on or about April 18, 2012, she was operating her motor vehicle in Bucks County, Pennsylvania when she was negligently struck by another motor vehicle being operated by Kerry Doh ("Doh").  Compl. ¶¶ 7-8.  Camp contends that she suffered serious and permanent bodily injuries as a result of the motor vehicle accident.  Id. ¶ 8.  At the time of the collision, Doh was insured under a Travelers Insurance Company ("Travelers") policy with

bodily injury limits of $100,000/$300,000. Id. ¶ 9. On December 10, 2016, after commencing suit against Doh and Travelers, Camp accepted $82,000 in settlement of her claims against them. Id. ¶ 11.

At the time of the accident, Camp's motor vehicle was insured under the NJMIC Policy. Id. ¶ 13. The NJMIC Policy included a UIM endorsement in which NJMIC agreed to pay "for compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury (1) sustained by an insured person; and (2) caused by an accident, and arising out of the ownership, maintenance, or use of an underinsured motor vehicle." Id. ¶ 14. Camp claims that on March 9, 2015[1] and December 22, 2015, she submitted to NJMIC a formal demand package for coverage under the UIM endorsement which included medical reports and records indicating that her total lifetime cost of treatment would be $221,412.00. Id. ¶¶ 20, 26. Camp further avers that by letter dated February 11, 2016, NJMIC advised her that it had reviewed all relevant records and would not be making a settlement offer on her claim because "it appears [Camp] had been fairly compensated by the tort carrier for the injuries she sustained in the loss." Id. ¶ 23.

On March 24, 2016, NJMIC filed a Motion to Dismiss Camp's bad faith claim set forth in Count II the Complaint, arguing that it lacked the particularity required to state a claim under Federal Rule of Civil Procedure 9(b) because it contained only "conclusory statements alleging

---

[1] Although Camp claims that her first submission to NJMIC occurred on March 9, 2015, a review of the letter attached as Exhibit B to the Complaint suggests otherwise. For example, the first page of the letter is dated March 9, 2015, while the second page of the letter is dated November 5, 2015, more than seven months later. See Compl. Ex. B, at 27-28. In addition, the letter references medical reports dated August 4, 2015 and September 16, 2015, which post-date a March 9, 2015 submission by several months. Thus, it appears that Camp first apprised NJMIC of her claim in or around November 2015.

general conduct" and "a generic and non-specific reference to bad faith without enumerating any specific conduct of the defendant other than a disagreement over the value or amount of the claim." Def.'s First Mot. (Doc. No. 2) at 4, 31.  In Count II, Camp alleged that NJMIC acted in bad faith contrary to its statutory duty under 42 Pa. Cons. Stat. § 8371 by:

a. Failing to evaluate plaintiff's claim objectively and fairly;

b. Failing to reevaluate plaintiff's claim objectively and fairly based on new information;

c. Engaging in dilatory and abusive claims handling;

d. Failing to adopt or implement reasonable standards in evaluating plaintiff's claim;

e. Acting unreasonably and unfairly in response to plaintiff's claim;

f. Not attempting in good faith to effectuate a fair, prompt and equitable settlement of plaintiff's claim in which the defendant's liability under the policy has become reasonably clear;

g. Subordinating the interests of the insured and those entitled under its insured[']s coverage to its own financial monetary interests;

h. Failing to promptly offer reasonable payment to the plaintiff;

i. Failing reasonably and adequately to investigate plaintiff's claim;

j. Failing reasonably and adequately to evaluate or review the medical documentation in defendant's possession;

k. Violating the fiduciary duty owed to the plaintiff;

l. Acting unreasonably and unfairly by withholding underinsured motorist benefits justly due and owing to the plaintiff;

m. Failing to make an honest, intelligent and objective settlement offer;

n. Causing plaintiff to expend money on the presentation of his [sic] claim; and

o. Causing the plaintiff to bear the stress and anxiety associated with litigation.

Compl. ¶ 35 (a)-(o).

On March 30, 2016, this Court ruled in favor of NJMIC and dismissed Count II of Camp's Complaint without prejudice and granted her leave "to file an amended complaint identifying unreasonable conduct as Plaintiff only presently pleads submitting a demand package for [UIM] coverage and Defendant's denial due to earlier compensation for the alleged injuries. Plaintiff has not [pled] facts other than denial and refusing to make an offer" and so her Complaint "lack[ed] facts stating a bad faith claim." Order (Doc. No. 5) at 1.

On April 7, 2016, Camp filed a First Amended Complaint setting forth identical allegations as those contained in her original Complaint, with the exception of subsections (a) through (f) of paragraph 35. Am. Compl. (Doc. No. 8) ¶ 35 (a)-(f). The six revised allegations allege that NJMIC acted in bad faith by:

   a. Failing to evaluate the medical records and reports included in plaintiff's demand package clearly establishing that plaintiff will incur a total lifetime cost of $221, 412.00 for medical treatment and medications related to injuries sustained in the subject motor vehicle accident. See Exhibit B.

   b. Failing to make a settlement offer despite clear and uncontradicted medical records and reports establishing that plaintiff will incur a total lifetime cost of $221,412.00 for medical treatment and medications related to injuries sustained in the subject motor vehicle accident. See Exhibit B.

   c. Failing to evaluate the medical records and reports included in plaintiff's demand package clearly establishing that plaintiff suffered serious and permanent injuries to her neck, right shoulder and right wrist including significant aggravations to pre-existing cervical spondylosis with broad based disc protrusion at C5-6, cervical radiculopathy at C6, right shoulder sprain and strain, and carpal tunnel syndrome requiring surgical intervention. See Exhibit B.

   d. Failing to make a settlement offer despite clear and uncontradicted medical records and reports establishing that plaintiff suffered serious and permanent injuries to her neck, right shoulder and right wrist including significant aggravations to pre-existing cervical spondylosis with broad based disc protrusion at C5-6, cervical radiculopathy at C6, right shoulder sprain and strain, and carpal tunnel syndrome requiring surgical intervention. See Exhibit B.

   e. Failing to evaluate the medical records and reports included in plaintiff's demand package clearly establishing that plaintiff suffered and continues to suffer from severe

       pain and discomfort in her neck, right shoulder and right wrist, and will require Nucynta ER, and extended release opiate analgesic, to manage her chronic pain for the foreseeable future. <u>See</u> Exhibit B.

    f.    Failing to make a settlement offer despite clear and uncontradicted medical records and reports establishing that plaintiff suffered and continues to suffer from severe pain and discomfort in her neck, right shoulder and right wrist, and will require Nucynta ER, and extended release opiate analgesic, to manage her chronic pain for the foreseeable future. <u>See</u> Exhibit B.

<u>Id.</u> ¶ 35 (a)-(f) (emphasis in original).

       On April 14, 2016, NJMIC filed a Motion to Dismiss Count II of the First Amended Complaint arguing that Plaintiff's claims still "contain generic and non-specific references to alleged 'bad faith' without enumerating any specific conduct of the defendant other than a disagreement over the value or amount of the claim," which this Court has already deemed insufficient to meet the Rule 12(b)(6) pleading standard. Def.'s Second Mot. (Doc. No. 14) ¶ 11. As discussed below, this Court agrees with NJMIC.

## II.    ANALYSIS

### A.    Standard of Review

       "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556-57 (internal

quotation marks omitted)). "In light of Twombly, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. . . ." Great W. Mining & Mineral Co., 615 F.3d at 177 (quoting Twombly, 550 U.S. at 556). It requires "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556). In determining the adequacy of a complaint, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).[2]

### B. Bad Faith Claim (Count II)

The Pennsylvania General Assembly promulgated 42 Pa. Cons. Stat. § 8371 to create a cause of action in Pennsylvania insurance law for "bad faith." The statute provides in relevant part:

---

[2] NJMIC claims that "[b]ecause insurance bad faith claims are essentially claims of fraud," allegations of bad faith must be pled under the heightened "particularity" pleading standard articulated in Federal Rule of Civil Procedure 9(b). Def.'s First Mot. ¶¶ 7-9. This Court has previously determined, however, that an insurer's conduct "need not be fraudulent" for the insurer to be found liable under 42 Pa. Cons. Stat. § 8371 for acting in "bad faith" toward its insured. Atiyeh v. Nat'l Fire Ins. Co., 742 F. Supp. 2d 591, 598 (E.D. Pa. 2010) (citing Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). For this reason, the heightened Rule 9(b) pleading standard does not apply, and Plaintiff's allegations will be evaluated under the Rule 8(a) pleading standard of Twombly and Iqbal. See Porter v. Safeco Ins. Co., No. 3:15-cv-759, 2016 U.S. Dist. LEXIS 15877, at *22-23 (M.D. Pa. Feb. 9, 2016) (finding that the proper pleading standard for bad faith claim was not subject to the heightened Rule 9(b) pleading standard, as the allegations do not constitute a cause of action for fraud).

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of the interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.

While the statute does not explicitly define "bad faith," both the Pennsylvania federal and state courts have defined "bad faith" in this context as "[a] frivolous or unfounded refusal to pay proceeds of a policy." Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); Atiyeh, 742 F. Supp. 2d at 598. To recover on a bad faith claim, a claimant is required to show by clear and convincing evidence that: (1) the defendant insurer did not have a reasonable basis for denying the policy benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis when it denied the claim. Keefe, 203 F.3d at 225 (further citation omitted). Although an insurer's conduct need not be fraudulent for an insured to recover pursuant to a "bad faith" claim, mere negligence or bad judgement will not suffice. Atiyeh, 742 F. Supp. 2d at 598 (citing Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). A claimant must show that the insurer acted in bad faith based on some motive of self-interest or ill will. Id.

Courts in this Circuit have routinely dismissed bad faith claims reciting only "bare-bones" conclusory allegations that are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss. For instance, in Pasqualino v. State Farm Mut. Auto. Ins. Co., No. 15-007, 2015 U.S. Dist. LEXIS 69318, at *3-4 (E.D. Pa. May 28, 2015), the plaintiff set forth a laundry list of allegations concerning the defendant insurer's purported bad faith, including that the defendant "failed

objectively and fairly to evaluate [p]laintiff's claim"; "failed to adopt or implement reasonable standards in evaluating [p]laintiff's claim"; "acted unreasonably and unfairly in response to [p]laintiff's claim"; "did not attempt in good faith to effectuate a fair, prompt, and equitable settlement of [p]laintiff's claim"; and "failed reasonably and adequately to evaluate or review the medical documentation in [d]efendant's possession," among other things.  In dismissing the bad faith claim, the district court held that these allegations, "d[id] not provide any factual allegations from which the Court could make a plausible inference that [d]efendant knew or recklessly disregarded its lack of a reasonable basis for denying benefits" and while the allegations "perhaps suggest[ed] that a bad faith claim [was] *possible*, they d[id] not allow for any non-speculative inference that a finding of bad faith [was] *plausible*" as required by the pleading standard set forth in Twombly and Iqbal.  Id. at *12-13 (emphasis in original).

In Atiyeh, 742 F. Supp. 2d at 599, the plaintiff alleged that his insurer had "breached its duty of good faith and fair dealing by: (a) failing to conduct a reasonable investigation, (b) denying benefits to plaintiff without a reasonable basis, (c) knowing and recklessly disregarding the lack of a reasonable basis to deny plaintiff's claim, [and] (d) asserting policy defenses without a reasonable basis."  In granting the defendant's motion to dismiss, the court found that the complaint set forth "merely conclusory legal statements" and "'bare-bones' conclusory allegations which [did] not state a plausible bad faith claim."  Id.

Similarly, in Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012), the Third Circuit affirmed the dismissal of a bad faith claim which merely alleged "conclusory statements unsupported by facts" that the defendant "engag[ed] in unfair settlement negotiations" and "intentionally misrepresent[ed] . . . its evaluation of [p]laintiff's claim," but failed to provide facts in support of its allegations, such as "details describing what was unfair

8

about the negotiations," and what the alleged "misrepresentations may have been." Id. (internal quotations omitted). Such "broad and conclusory statements," the court held, "fail[ed] to allege a legally sufficient cause of action for bad faith under [42 Pa. Cons. Stat.] § 8731." Id.

Additionally, in Eley v. State Farm Ins. Co., No. 10-5564, 2011 U.S. Dist. LEXIS 8915, at *11-12 (E.D. Pa. Jan. 31, 2011), the plaintiff averred that the defendant failed to negotiate the plaintiff's UIM claim in good faith, failed to properly investigate and evaluate the plaintiff's insurance claim, and knew or recklessly disregarded the fact that it had no reasonable basis for denying the claim. In granting the defendant's motion to dismiss, the district court determined that these allegations were nothing more than "bare-bones allegations . . . devoid of [the] factual specificity" required of a well-pled bad faith claim. Id. at *12. Stripped of these allegations, the factual claims made in the complaint amounted to nothing more than a breach of contract claim that: (1) the plaintiff's insurance policy with the defendant provided UIM coverage; (2) the plaintiff suffered injury and/or loss from a UIM; (3) plaintiff complied with the terms of the insurance policy when seeking coverage; and (4) the defendant declined to settle the plaintiff's claim. Id.

Here, Camp's bad faith claim consists of bald and conclusory statements. The bad faith allegations in subsections (i) through (k) of paragraph 35 of the Amended Complaint remain unchanged from Camp's original pleading. They include claims that NJMIC "engag[ed] in dilatory and abusive claims handling," "fail[ed] to adopt or implement reasonable standards in evaluating plaintiff's claim," and "act[ed] unreasonably and unfairly in response to plaintiff's claim." Am. Compl. ¶ 35(i)-(k). These allegations are devoid of factual specificity as to what claims handling practices were abusive or how NJMIC acted unreasonably. As the Third Circuit ruled in Smith, without such details, a plaintiff has "fail[ed] to allege a legally sufficient cause of

9

action for bad faith under § 8371." 506 F. App'x at 136; see also Twombly, 550 U.S. at 563 n.8 ("[A] complaint must allege facts suggestive of [the proscribed] conduct . . . to raise a right to relief above the speculative level.").

Furthermore, none of the amendments made by Camp to her original bad faith allegations cure this defect. Subsections (a), (c) and (e) of paragraph 35 of the Amended Complaint allege that NJMIC "fail[ed] to evaluate the medical records and reports included in plaintiff's demand package." Am. Compl. ¶ 35(a), (c), (e). Not only is this a legal conclusion that may be disregarded by the Court in determining the sufficiency of the pleading, but it is plainly contradicted by the facts contained within the pleading itself. Paragraph 23 of the Amended Complaint alleges that in response to Camp's UIM claim, representative, Adrienne King, from NJMIC advised that the insurer had "reviewed all relevant records" in determining that it would not be approving her UIM claim. Id. ¶ 23. Camp does not challenge this with any factual averments of her own, and the legal conclusion Camp asks this Court to make regarding NJMIC's evaluation of the records need not be afforded any weight. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Similarly, subsections (b), (d) and (f) of paragraph 35 of the Amended Complaint allege that NJMIC acted in bad faith by "failing to make a settlement offer" in response to her claim. Am. Compl. ¶ 35(b), (d), (f). However, failure of an insurer to "immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." Smith, 506 F. App'x at 137; see Nw. Mut. Life Ins. Co. v. Babayan, 430 F. 3d 121, 138 n.22 (3d Cir. 2005) (neither denial of a claim nor a low estimate of loss alone constitutes bad faith). Thus, other than the conclusory allegation that NJMIC failed to make a settlement offer, Camp posits no additional factual averments from which it could be found that NJMIC's failure to make an offer was in bad faith.

Allegations that an insurer simply "failed to make a settlement offer," without additional elements of "self-interest" or "ill will" do not amount to a claim for bad faith under 42 Pa. Cons. Stat. § 8371. See Mozzo v. Progressive Ins. Co., No. 14-5752, 2015 U.S. Dist. LEXIS 192, at *8 (E.D. Pa. Jan. 5, 2015) (dismissing bad faith claim because "[n]othing in the complaint sets forth any facts regarding [d]efendant's actions . . . from which the Court can infer a bad faith claim"); Pfister v. State Farm Fire & Cas. Co., No. 11-cv-0899, 2011 U.S. Dist. LEXIS 81324, at *9 (W.D. Pa. July 26, 2011) (dismissing bad faith claim because plaintiff "failed to allege facts that reasonably suggest a "frivolous or unfounded refusal to pay proceeds of a policy") (citing Terletsky, 649 A.2d at 688); Robbins v. Metro Life Ins. Co. of Conn., 2008 U.S. Dist. LEXIS 104902, at *22-23 (E.D. Pa. Dec. 29, 2008) (failing to "provide sufficient facts . . . to suggest that [d]efendant lacked a reasonable basis for the denial of [] benefits" fatal to bad faith claim at pleading stage).

Camp attempts to overcome this deficiency by contending in her reply brief that NJMIC acted in bad faith by also "fail[ing] to set forth any rational basis for [its] decision . . . ." Reply (Doc. 22-1) at 2. This Court, however, is not required to entertain claims raised for the first time in response to a motion to dismiss. Gueson v. Feldman, No. 00-cv-1117, 2002 U.S. Dist. LEXIS 16265, at *14 (E.D. Pa. Aug. 22, 2002). Moreover, Camp provides no legal support for her contention. Although bad faith may be found where an insurer fails to communicate its reasons for denying a claim to an insured, see Pfister, 2011 U.S. Dist. LEXIS 81324, at *8; Brown, 860 A.3d at 501, in this case, according to the facts pled by Camp in her Amended Complaint, NJMIC actually did provide a reason for denying the claim. In paragraph 23 of the Amended Complaint, Camp alleges that in response to her submission for UIM coverage, NJMIC responded that it "[would] not be making a settlement offer as 'it appears [Plaintiff] has been

11

fairly compensated by the tort carrier for the injuries she sustained in the loss.'" Am. Compl. ¶ 23. Thus, the facts alleged in the Amended Complaint clearly contradict the legal conclusion that Camp asks this Court to accept. According, Camp's bad faith claim is insufficient to state a claim upon which relief can be granted.

### III. CONCLUSION

For the foregoing reasons, NJMIC's Motion to Dismiss Count II of the Amended Complaint will be granted.[3] An appropriate Order follows.

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

---

[3] "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Here, the fact that Camp failed to correct the deficiencies of her original Complaint in her Amended Complaint is "a strong indication that the [Plaintiff] [has] no additional facts to plead" with respect to her allegations that NJMIC acted in bad faith. Lockett v. Pennsylvania Dept. of Corrections, No. 11-1314, 2012 U.S. Dist. LEXIS 97611, at *9 n.1 (W.D. Pa. July 13, 2012) (citing Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009)).